IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHASE EPPS, | |
| Plaintiff, | |
| v. | Case No. 20-cv-05742 |
| THOMAS DART *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Defendants Tom Dart ("Sheriff Dart") and Amanda Gallegos ("Gallegos") have moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For reasons stated herein, Defendants' Motion to Dismiss [51] is denied and Plaintiff's motion to voluntarily dismiss without prejudice [90] is granted.

### I. Background

The following factual allegations are taken from the Amended Complaint (Dkt. 40 ("FAC")) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).[1]

Defendant Dart, the Sheriff of Cook County, decided to reopen and begin housing inmates in Cook County Jail's Division 4 facility. FAC ¶ 2. Defendant Gallegos was the Executive Director in charge of the Jail. *Id.* ¶ 4. Defendants Hernandez, Johnson,

---

[1] On November 13, 2020 Plaintiff filed his *pro se* Complaint against Sheriff Dart and Gallegos alleging he was subjected to poor conditions of confinement while housed in Division 4 at the Cook County Department of Corrections. In April 2021, the Court recruited counsel for Plaintiff. (Dkts. 26, 27). The Court recruited current counsel from Kirkland and Ellis LLP, who then filed their appearances on Plaintiff's behalf in June 2021. (Dkts. 31, 35—38).

1

Hudson, and Sperlock, were corrections officers in Division 4. *Id.* ¶ 3.[2] Plaintiff Chase Epps was an inmate at Shawnee Correctional Center in Vienna, Illinois. *Id.* ¶ 8. From December 15, 2019 to October 15, 2020, the period in which Plaintiff claims he was deprived of his constitutional rights, he was a pretrial detainee at Cook County Jail in Chicago. *Id.* For the majority of that time, Plaintiff was held in Division 4 of the jail. *Id.* Division 4 was a nearly ninety-year-old facility when it was closed in May 2018. *Id.* ¶¶ 2, 15—16. It was closed for almost two years and was slated for demolition. *Id.* ¶¶ 16, 20. In the years before Division 4's closure, Sheriff Dart was sued regarding conditions in Division 4, including mold and mildew in showers and cells, burst pipes causing dirty standing water, and raw sewage backing up into cells. *Id.* ¶ 17.

In April 2020, in response to the COVID-19 pandemic, the Sheriff opened several divisions of the Jail that previously were closed including Division 4, which was reopened on April 6, 2020. *Id.* ¶ 20. In or around April of 2020, because of Dart's decision, Plaintiff was moved to Division 4; he was among the earliest inmates moved there. *Id.* ¶ 24. There, Plaintiff had a lack of suitable drinking water, and he and other men in his tier sustained severe headaches that lasted for hours as a result. *Id.* ¶¶ 27, 29. Plaintiff was provided only one alternative water source and could only obtain one or two 6-ounce cups of water per day. *Id.* ¶¶ 36—38. For over six months Plaintiff did not have access to an adequate supply of drinkable water. *Id.* ¶ 48.

---

[2] Defendants Hernandez, Johnson, Hudson, and Sperlock did not join the present motion to dismiss, nor did they file their own dismissal motion.

Another problem was extensive mold and mildew infestation in the shower room in Plaintiff's tier. *Id.* ¶ 52. The mold persisted in Plaintiff's tier in Division 4 until his departure, so he was subjected to the significant health risks posed by the mold every time he showered for over six months. *Id.* ¶ 68. Plaintiff was also subjected to plumbing leaks, exposure to raw sewage, and flooding. *Id.* ¶¶ 69—88. Plaintiff broke out in skin rashes that lasted for nearly two months. *Id.* ¶¶ 90—91. Defendants Hernandez, Johnson, Hudson, and Sperlock told Plaintiff and other inmates that they were raising the issues with Defendant Gallegos, who did not act to remedy the conditions in Division 4. *Id.* ¶ 107. Sperlock told Plaintiff that Sheriff Dart was aware of the conditions there. *Id.* ¶ 108.

In Count I of the Amended Complaint, Plaintiff brings a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against Sheriff Dart. He alleges that Dart, through his final policy decision to reopen Division 4, deprived Plaintiff of his rights under the Fourteenth Amendment by subjecting him to objectively unreasonable conditions of confinement and denying him his basic human needs. *Id.* ¶ 112. In Count II, Plaintiff makes individual capacity claims against Sheriff Dart, and Defendants Gallegos, Hernandez, Johnson, Hudson, and Sperlock. He alleges that these defendants violated his rights under the Fourteenth Amendment by subjecting him to objectively unreasonable conditions of confinement and denying him his basic human needs. *Id.* ¶ 119. Now before the Court are the motion to dismiss filed by Dart and Gallegos [51] and Plaintiff's motion to voluntarily dismiss this lawsuit without prejudice [90].

## II.   Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671

F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

Federal Rule of Civil Procedure 41(a)(2) permits voluntary dismissal and states in part: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A district court has discretion to grant a motion for voluntary dismissal. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007). Such a motion should not be granted if defendant would suffer "plain legal prejudice." *Riggs v. Sonney*, No. 1:13-CV-9291, 2017 WL 2936697, at *1 (N.D. Ill. July 10, 2017) (internal citations and quotation marks omitted).

### III. Analysis

Defendants argue that: Plaintiff does not sufficiently allege a *Monell* claim against Sheriff Dart in his official capacity; respondeat superior does not apply in Section 1983 claims; Plaintiff fails to state a claim against Sheriff Dart and Gallegos in their individual capacities; and Plaintiff's Section 1983 claims against Dart and Gallegos are barred by various immunities.

#### A. *Monell* Claim

The Supreme Court in *Monell*, 436 U.S. 658, "held for the first time that a municipal government could be a proper defendant under § 1983. At the same time, *Monell* rejected the common-law theory of respondeat superior liability for an employee's actions." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citation omitted). A plaintiff bringing a claim under *Monell* must show

that the constitutional violation "was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Id.* (citations omitted). Defendants argue that Plaintiff makes no allegations about what express policy caused his alleged injury and fails to allege a widespread practice causing his injury. Plaintiff responds that his allegations fall under the third *Monell* prong— Sheriff Dart made the decision to re-open Division 4 as a person with final policymaking authority, thus subjecting Cook County to liability under 42 U.S.C. § 1983 and *Monell*.

Defendants argue that not every decision by a municipal officer gives rise to liability under § 1983, relying on *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664 (7th Cir. 2009) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). But neither case was decided at the motion to dismiss stage. It is well-settled that there is no heightened pleading standard for *Monell* claims. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016).

Defendants do not dispute that Dart has final policymaking authority. They contend, however, that "[i]nstead of a policy, reopening Division 4 for spreading detainee housing in compliance with state law guidelines falls under the discretionary decisions Sheriff Dart is allowed to take to properly manage and operate Cook County Jail." (Dkt. 61 at 4). On one hand, Defendants argue that Dart could not choose between alternatives because he had to comply with "mandatory state law," but on the other hand, they say this was a "discretionary decision." (*Id.*). Regardless

6

of how Dart's decision is characterized, at this pleading stage, Plaintiff's allegations are sufficient to state a *Monell* claim. *See e.g. Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) ("It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once.") (internal citation and quotation marks omitted).

Plaintiff alleges that Dart had "final policymaking authority over the management and operations at Cook County Jail" and "was responsible for maintaining the custody, safety, and well-being of the inmates at the Cook County Jail." FAC ¶9. Further, because of Dart's policy decision, Plaintiff "was moved to the recently re-opened Division 4." *Id*. ¶ 24. Plaintiff alleges that Dart made a "final policy decision to reopen Division 4," despite knowing the division was "previously closed down and uninhabitable", creating "serious risks to [Plaintiff's] health and safety and depriv[ing] him of identifiable human needs." *Id*. ¶¶ 112, 113, 114. Plaintiff's allegations thus plausibly state a claim that Sheriff Dart, an official with final policymaking authority, caused the violation of his constitutional rights.[3]

### B. Claim against Dart and Gallegos in their individual capacities

Under § 1983, individual liability "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (citation and internal quotation marks omitted). "To state a claim for individual

---

[3] Defendants also argue that Plaintiff cannot rely on *Mays v. Dart,* 20-cv-2134 (N.D. Ill) for support because it involved unrelated issues. Notwithstanding Plaintiff's reliance on *Mays*, at this pleading stage, he can rely on his own experience without discussing other specific individuals. *See Howell*, 987 F.3d at 655; *Garcia v. City of Chicago*, No. 17 C 3932, 2018 WL 3546742, at *2 (N.D. Ill. July 24, 2018).

7

liability under section 1983, a plaintiff must allege that the defendant was 'personally responsible for the deprivation of a constitutional right' because 'he directed the conduct causing the constitutional violation, or it occurred with his knowledge or consent.'" *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1162 (N.D. Ill. 2014) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). A defendant need not have participated directly in the constitutional deprivation to be liable, but the defendant still must have "'know[n] about the conduct, facilitate[d] it, approve[d] it, condone[d] it, or turne[d] a blind eye for fear of what they might see.'" *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)).

Defendants contend that no facts suggest that Dart or Gallegos "had any personal knowledge that a risk existed in Division 4, that there was a substantial risk to the Plaintiff, or that Sheriff Dart and Defendant Gallegos disregarded the risk and failed to protect Plaintiff." (Dkt. 61 at 5). This argument disregards the allegations in the complaint. Plaintiff alleges that even before Division 4's closure in 2018, Dart was sued in a lawsuit addressing the conditions in Division 4. FAC ¶ 17. The allegations there were similar to those here—that there was mold and mildew in showers and cells, burst pipes causing dirty standing water, and raw sewage backing up into cells. *Id*. Nevertheless Dart made the decision to reopen Division 4 in April 2020. *Id*. ¶ 20. Around that time, Dart told press he was regularly making rounds among the Cook County Jail's Divisions. *Id*. ¶ 21. Also around that time, Dart was engaged in litigation about the Jail's management of the COVID-19 pandemic. *Id*. ¶ 23. Multiple

8

affidavits were filed in that litigation describing the conditions in Division 4. *Id*. Dart opened Division 4 anyway instead of fixing the conditions. *Id*. Plaintiff further alleges that Sperlock told him that Dart was aware of the conditions of confinement there, and Plaintiff was told by corrections officers that Dart visited Division 4 on at least one occasion. *Id*. ¶¶ 108, 109.

Hernandez, Johnson, Hudson, and Sperlock told Plaintiff and other detainees that they were raising the drinking water problem higher up the chain of command, including to Gallegos, who also failed to remedy the issue. *Id*. ¶ 45. The same was true for the mold and mildew issue and the issues with plumbing leaks, exposure to raw sewage, and flooding. *Id*. ¶¶ 59, 107. Plaintiff thus alleges that Dart and Gallegos had knowledge of or caused the unreasonable conditions of confinement and failed to take steps to remedy the serious risks to Plaintiff's health and safety. *Id*. ¶¶ 120—21.

Taken as true at this stage, these allegations state claims against Dart and Gallegos in their individual capacities.[4] *See Baker v. City of Chicago*, 483 F. Supp. 3d 543, 563 (N.D. Ill. 2020) (finding that plaintiff sufficiently alleged defendants' personal involvement and defendants' arguments about their involvement would likely turn on facts beyond the pleadings); *see also Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013) ("the key is to generally name the 'persons responsible for the problem.'") (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)).

---

[4] Again, Defendants rely on cases that are not determinative of the issue here because they were decided on summary judgment. *E.g. Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012); *Manney v. Monroe*, 151 F. Supp. 2d 976 (N.D. Ill. 2001).

**C. Immunities**

Defendants move for dismissal on the grounds that they are entitled to qualified immunity for the Plaintiff's individual capacity claim. However, "[b]ecause a qualified immunity defense so closely depends on the facts of the case,' a 'complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.'" *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). As the Seventh Circuit explained in *Hanson v. LeVan*: "Nor is [a motion to dismiss] always (if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." 967 F.3d 584, 589 (7th Cir. 2020). Defendants argue only that Plaintiff has not sufficiently alleged a violation of his constitutional rights but as explained above, he has. The motion to dismiss on this ground is denied.

Finally, Defendants seek dismissal under the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101, *et seq*. ("Tort Immunity Act"). They argue that "[a]ny allegations about Sheriff Dart in his official capacity involve discretionary policies about jail administration and should be dismissed because they cannot serve as a basis for liability under the Tort Immunity Act." (Dkt. 51 at 13). In *Young v. Peoria Cty., Illinois*, the court explained that the Tort Immunity Act did not "provide the individual [] Defendants immunity from Plaintiff's § 1983 claims." No. 1:16-CV-01367-JBM, 2017 WL 6418888, at *9 (C.D. Ill. Dec. 15, 2017) (citing *Thomas ex rel. Smith v. Cook County Sheriff*, 401 F. Supp. 2d 867, 875 (N.D. Ill. 2005). *See also*

*Kimble v. Cook Cty.*, No. 14-CV-8240, 2016 WL 232430, at *5 (N.D. Ill. Jan. 19, 2016) (explaining that the Tort Immunity Act "provides no protection against Plaintiff's Section 1983 claim against [defendant] because the Section 1983 claim is governed by federal, not state, law.").

In their reply, Defendants do not dispute this. Nevertheless they argue that they have immunity "for any state law claims because Plaintiff failed to show that their conduct was willful and wanton." (Dkt. 61 at 8). First, this argument was not raised in their motion to dismiss and therefore is waived. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) (explaining that "arguments raised for the first time in a reply brief are waived."). And Defendants still do not explain how that Tort Immunity Act protects them from Plaintiff's *federal* claims—the only claims in this suit. *See Kimble*, 2016 WL 232430, at *5; *Cf. Smith v. City of Chicago*, 143 F. Supp. 3d 741, 760 (N.D. Ill. 2015) (plaintiffs sufficiently alleged state law claims by alleging defendants acted willfully and wantonly). Defendants do not cite any authority to support their position on this issue in their motion or reply brief. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

### D. Voluntary Dismissal

Plaintiff seeks to voluntarily dismiss this lawsuit because, unlike when he first filed his complaint, he is no longer an inmate or subject to the constraints of the Prison Litigation Reform Act of 1995 (PLRA). Plaintiff was released from custody on

11

December 13, 2021. The Court has discretion to grant Plaintiff's motion. *Wojtas*, 477 F.3d at 927.

To avoid dismissal, a defendant "must show that 'plain legal prejudice' will result in order to avoid such a dismissal." *A.P. by & through Elliott v. Abbott Lab'ys, Inc.*, No. 3:13-CV-000480-NJR, 2019 WL 8268546, at *3 (S.D. Ill. Aug. 27, 2019) (quoting *Simons v. Fox*, 725 F. App'x 402, 406 (7th Cir. 2018). The Seventh Circuit has set forth factors for the Court to consider:

> defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant.

*Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969). These factors are "simply a guide for the trial judge, in whom the discretion ultimately rests." *Tyco Lab'ys, Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980).

In response to Plaintiff's motion, Defendants argue that Plaintiff failed to properly exhaust his administrative remedies under the PLRA, so granting the present motion would "take away a significant procedural defense of Defendant." (Dkt. 95 at 3). Although this defense will no longer be available to Defendants, it does not foreclose other defenses. Further, there is no pending motion to dismiss before the Court based on failure to exhaust. Defendants do not cite any case law in which a court denied a motion for voluntary dismissal on the grounds that defendant would no longer be able to raise a failure-to-exhaust defense against a (former) prisoner. Indeed in *Dixon v. Page*, the Seventh Circuit affirmed the dismissal of a prisoner's complaint, but explained: "This, of course, is not to say that (if the statute of limitations and other

12

potential obstacles permit) [plaintiff] might not file a new complaint under § 1983, with respect to which administrative exhaustion presumably would not be required since [plaintiff] is no longer a prisoner." 291 F.3d 485, 488 n.1 (7th Cir. 2002).[5]

Here, the case is in the relatively early stages: some discovery has occurred, however, limited to written discovery only; fact discovery is ongoing and the parties indicated they would seek an extension of that deadline (*see* Dkt. 93 at 3); and no summary judgment motion has been filed and no trial date set. Defendants contend that it was unreasonable for Plaintiff to wait nearly four months to seek a voluntary dismissal after being released from custody. But the Court does not find this amounts to "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action." *Pace*, 409 F.2d at 334. Defendants also argue that the parties have already spent resources and attorneys' fees on discovery. This does not mean Defendants have suffered legal prejudice. *See Riggs*, 2017 WL 2936697, at *3 (acknowledging defendant's case "might have been stronger and damage recovery would have been less had it continued under the PLRA" but still granting plaintiff's voluntary dismissal motion). Moreover, Plaintiff has agreed to stipulate that all completed and outstanding discovery will apply to the new case, and the Court will enforce that term.

Finally, Defendants contend that "current defense counsel may not be appointed to represent the Defendants if the case is refiled." (Dkt. 95 at 2). The Court is not clear what is meant by this argument; in any event, the argument is undeveloped and

---

[5] *Wojtas*, 477 F.3d 924, for example, involved the loss of a statute of limitations defense. And in *Paulino v. Taylor*, cited by Defendants, the court was unconvinced by defendants' arguments against dismissal: "The mere fact that Plaintiff seeks to refile without the limitations of the PLRA does not qualify as unduly vexatious." 320 F.R.D. 107, 110–11 (S.D.N.Y. 2017).

13

does not help Defendants meet their burden to show "plain legal prejudice." Considering the facts and procedural posture of this case together with the *Pace* factors, the Court finds that granting Plaintiff's motion is warranted.

Accordingly, the "terms that the court considers proper" (Fed. R. Civ. P. 41(a)(2)) for dismissal are: Plaintiff must file the identical complaint (Dkt. 40 ("FAC")) within seven days of the date of this order; Plaintiff shall comply with Local Rule 40.3(b)(2) regarding the filing of the designation sheet in order to ensure the new case is assigned to the undersigned judge; and all completed and outstanding discovery applies to the new case and no duplication will be permitted.

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [51] is denied. Plaintiff's motion to voluntarily dismiss without prejudice [90] is granted. This action is dismissed without prejudice. Civil case terminated.

E N T E R:

Dated: May 3, 2022

MARY M. ROWLAND
United States District Judge

14